IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HAROLD SAULS,                          §
                                       §
                    Plaintiff,         §
                                       §  Civil Action No. 3:05-CV-0409-D
VS.                                    §
                                       §
ROBERT WELCH, et al.,                  §

MEMORANDUM OPINION
AND ORDER

        In this lawsuit alleging federal civil rights and pendent

state-law claims arising from an arrest and search during a traffic

stop and an overnight jail detention, the court must decide whether

plaintiff has adduced evidence that would permit a reasonable jury

to find that his federal constitutional rights were violated and

that the individual defendants are not entitled to police officer

immunity regarding the state-law claims.   Concluding that

defendants are entitled to summary judgment, the court dismisses

this case with prejudice.

I

        Plaintiff Harold Sauls ("Sauls") sues defendants Robert Welch

("Officer Welch"), Alton Wells ("Officer Wells"), Mike Berryhill

("Officer Berryhill"), John Doe ("Officer Doe"), and the City of

Southlake, Texas ("Southlake") to recover damages under 42 U.S.C.

§ 1983 and Texas law arising from his arrest and overnight

detention, without necessary medications, in a jail cell that he

contends was too cold.   On November 20, 2003, at approximately 8:45

a.m., Sauls was driving his pickup truck westbound on Southlake

Boulevard in Southlake, Texas.[1]  Four of Sauls's employees were
with him, and they were en route to Keller, Texas, where Sauls was
constructing a home.  Southlake Boulevard is a four-lane street.
Two lanes are designated for eastbound travel and two lanes for
westbound travel. Between the eastbound and westbound lanes is a
median strip  approximately 12 feet wide.  Sauls was driving his
vehicle in the lane nearest to the median with the speed of traffic
proceeding in the same direction as he was, which he estimates as
approximately 45 to 50 miles per hour.

    At this same time, Officer Welch, a motorcycle officer of the
Southlake Police Department, was driving eastbound on Southlake
Boulevard.  Officer Welch observed a traffic violation committed by
the driver of a westbound blue vehicle, and he pulled into the
center turning lane, intending to make a U-turn in order to effect
a traffic stop.  Officer Welch stopped in the center lane so that
he could look at oncoming westbound traffic before turning.  At
this point, his rear wheel was touching the line marking the edge
of the eastbound median, and his motorcycle was angled towards the
northwest.  Officer Welch maintains that he had activated his light
equipment and briefly bumped his siren when he entered the center

---

[1]Except for stating defendants' contentions, the court
recounts the evidence in a light favorable to Sauls as the summary
judgment nonmovant and draws all reasonable inferences in his
favor.  *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422
F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing
*Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

lane, but Sauls alleges that he could not see the lights from his angle and that the sun was hitting the chrome on Officer Welch's motorcycle such that Sauls thought this reflection was Officer Welch's turn signal blinkers.  Two westbound trucks that were near Officer Welch slowed and attempted to yield for him.  About 200 feet behind the two trucks, a white Chevrolet Tahoe was in the outside westbound lane farthest from Officer Welch.  Sauls's pickup truck was next to the white Tahoe and was in the inside lane, closest to Officer Welch.  Defendants maintain that the white Tahoe next to Sauls braked and either completely stopped or nearly stopped before reaching Officer Welch's location.  Officer Welch then attempted to pull out into the lane in which Sauls was driving, but, realizing that Sauls was not going to stop, slammed his brakes as Sauls's vehicle passed "without slowing much" in close proximity to Officer Welch's motorcycle.  P. Br. 7.  Although Officer Welch's motorcycle never entered Sauls's lane of travel and remained at least one or two feet away, Sauls's truck came within three to four feet of the front tire of Officer Welch's motorcycle as Sauls passed by.

Believing that Sauls had committed a traffic violation, Officer Welch positioned himself behind Sauls's truck and signaled for him to pull over.  After Sauls stopped, he approached Officer Welch and began speaking to him in an angry and confrontational tone.  This caused Officer Welch to summon Officers Wells and

Berryhill as backup.   As Officer Welch was trying to obtain sufficient information to issue Sauls a citation, Sauls continued his angry comments toward Officer Welch, leading to the comment that immediately caused his arrest.   Officer Wells maintains that he heard Sauls make a statement to the effect of "I'll show this officer," and then, "I'll put a bullet in his head."   Ds. Br. 9. Sauls contends that he did not make this statement.   Sauls's comments and actions caused Officer Wells to drop the papers he was holding so that he could arrest Sauls.   Officer Wells told Sauls to turn around and put his hands behind his back, and Officer Wells handcuffed him.   While Sauls was being arrested, he stated: "I said why don't you just shoot me in the head."   P. Br. 10.

Sauls immediately complained that the handcuffs were too tight, and Officer Berryhill checked them and loosened them slightly.   Not long after this, Sauls told the officers that he had some sort of medical or heart condition, and an ambulance crew was summoned to the scene.   When the ambulance arrived, Sauls refused to give them any information and would not allow the crew to examine him.   The ambulance departed, and Officer Berryhill placed Sauls in his patrol car and transported him to the police station.

Sauls arrived at the police station around 9:20 or 9:30 a.m. Officer John Stokes handled the booking process.   Defendants maintain that Sauls was not cooperative and initially refused to provide necessary information, such as his wife's telephone number

and his social security number. Some hours elapsed before Sauls
eventually agreed to furnish his social security number to police
personnel attempting to complete the booking process. Defendants
contend that Sauls refused to provide any financial information,
even though he was told that such information was used by the
magistrate who handled the arraignment process to evaluate whether
Sauls would be entitled to a court-appointed attorney. Defendants
also posit that booking paperwork is required to be completed
before the magistrate will conduct the arraignment. This booking
paperwork includes the Arrest or Offense Report, a Defendant's
Information Sheet, records of a criminal history, and the paperwork
used in court, including the Adult Warning Form, the Defendant's
Financial Statement, and the Request for Appointed Counsel.

Sauls contends that the magistrate may have been at the Jail
when he first arrived, but defendants maintain that by that time,
the magistrate ordinarily would have finished her business for the
day and would not have been present. Alternatively, defendants
contend that even if the magistrate was present when Sauls first
arrived at the Jail, he would not have been presented to her until
his booking paperwork was completed. And because Sauls refused to
cooperate, and for several hours did not provide full information
to the personnel handling his booking, by the time the booking was
complete, the magistrate was certainly not at the Jail.

Sauls was placed in a cell at the Southlake City Jail until

his arraignment the following morning.  He contends that the cell
was "frigid," and that he was not provided a second blanket until
later at night, after a shift change.  After a period of time,
Sauls was transferred to an adjoining cell where the temperature
was tolerable with use of blankets.  The next morning, Sauls was
presented to the magistrate, posted bail, and was released.

In May 2004 Southlake police presented to the Tarrant County
Grand Jury the allegation that Sauls had committed the offense of
retaliation, in violation of Tex. Penal Code Ann. § 36.06 (Vernon
2003 & Supp. 2006).  The grand jury no-billed Sauls.  Sauls then
brought the instant lawsuit, alleging that Officers Welch, Wells,
Berryhill, and Doe, and Southlake violated his constitutional right
to (1) freedom from the unreasonable seizure and search of the
person, (2) freedom from incarceration in a jail facility that was
too cold for human habitation, (3) reasonable bail and access to
necessary medications, (4) freedom from two illegal and baseless
prosecutions, and (5) the right to be submitted to an impartial
magistrate for a timely probable cause determination and for the
setting of bail.  Sauls asserts claims under 42 U.S.C. § 1983
against the individual officers and Southlake for various
violations of his Fourth Amendment rights and also under Texas law
against the individual officers for assault and battery, false
arrest and illegal imprisonment, and malicious prosecution.

In April 2007 Sauls dismissed with prejudice his claims

against Officer Berryhill.  He apparently has abandoned his claims

against Officer Doe, whom he has never served.[2]  The remaining

defendants——Officers Wells and Welch and Southlake——now move the

court for summary judgment.

II

The court begins with defendants' argument that Officers Welch

and Wells are entitled to summary judgment on the ground that they

did not violate Sauls's constitutional rights during his detention

or arrest.[3]

_____

[2]In an April 10, 2007 stipulation of dismissal of Sauls's
claims against Officer Berryhill, which was filed by Sauls and all
defendants except Officer Doe, the parties stated that the
dismissal did not limit Sauls's "claims against the remaining
Defendants Robert Welch, Alton Wells, and City of Southlake."
Stipulation of Dismissal 1.  This statement confirms that Sauls
does not consider Officer Doe to be a defendant who remains in the
case.  Accordingly, the court will provide in the judgment that
Sauls's action against Officer Doe is dismissed without prejudice.

[3]Defendants also argue that they are entitled to summary
judgment dismissing Sauls's unreasonable search claim.  They posit
that Sauls has not described the search of his person that forms
the basis of his constitutional claim and that, to the extent he
bases his unreasonable search allegations on the pat-down of his
person to look for weapons, the search was reasonable and permitted
under *Beck v. Ohio*, 379 U.S. 89 (1964), and *United States v.
Robinson*, 414 U.S. 218 (1973).  Sauls does not address defendants'
argument in his brief and has not adduced evidence that would
permit a reasonable jury to find that there was an unreasonable
search, in violation of his Fourth Amendment rights.  To the extent
Sauls intends to base his § 1983 claims on an alleged unlawful
search, in violation of the Fourth Amendment, the court concludes
that he has not adduced sufficient evidence to raise a genuine
issue of material fact.  Accordingly, the court grants defendants'
motion for summary judgment dismissing Sauls's unreasonable search
claim.

A

Defendants contend that no constitutional violation occurred during Sauls's detention or arrest because there was probable cause for the initial stop and the ensuing arrest.  They maintain that Officer Welch was entitled to stop Sauls for an investigatory detention after he observed Sauls commit several traffic violations.  Defendants posit that Sauls committed a traffic violation when he approached Officer Welch's police motorcycle while Officer Welch was attempting to stop a traffic violator, and Sauls did not yield the right of way, did not immediately drive to a position parallel to and as close as possible to the right-hand edge of the curb, and did not stop and remain standing until Officer Welch passed him, in violation of Tex. Transp. Code Ann. § 545.156 (Vernon 1999).  Defendants contend that Sauls also violated Tex. Transp. Code Ann. § 545.157 (Vernon 1999 & Supp. 2006) (passing authorized emergency vehicle) because he did not vacate the lane closest to Officer Welch or slow to a speed of less than 20 m.p.h below the posted speed limit; violated Tex. Transp. Code Ann. § 545.401 (Vernon 1999) (reckless driving) because he acted in willful or wanton disregard for the safety of other persons or property by driving 45 to 50 m.p.h. in an area with a posted limit of 45 m.p.h, driving within three to four feet of hitting Officer Welch's motorcycle, and immediately hitting his brakes and swerving to the right without looking to the right,

while he was next to the motorcycle; and violated Tex. Transp. Code Ann. §§ 545.351 and 545.352 (Vernon 1999 & Supp. 2006), which prohibit, respectively, driving at a speed greater than is reasonable and prudent under the circumstances, and driving at a speed greater than the posted speed limit.

Defendants next argue that, after the initial detention, Officer Wells had probable cause, based on the totality of the circumstances, to believe that Sauls had committed the felony offense of retaliation, when Officer Wells heard Sauls state, "I'll put a bullet in his head."  They posit that this belief, even if based on mistaken information, is sufficient probable cause to justify Sauls's arrest, so long as Officer Wells reasonably relied on the information in making the arrest.

Sauls responds that there is a genuine issue of material fact whether it was reasonable for Officer Welch to conclude that a criminal offense had been committed and, in turn, that there was probable cause.  Sauls points out that Officer Welch's belief that Sauls had failed to yield to him in an aborted attempt to enter the lane of travel is undermined by Officer Welch's acknowledgment that Sauls slowed down.  Sauls maintains that the facts alleged suggest that there was no lawful basis for an investigatory detention, much less an arrest.  He argues that Officer Welch's failure to warn oncoming traffic of his intent to enter the traffic lane by use of his siren, and to ensure that his action was completed with regard

for the safety of others, were probable violations of law.  Sauls next contends that Officer Wells did not have probable cause to arrest him.  Sauls maintains that he did not say anything remotely implying that he was threatening another officer, no one else heard it, and the statement is not captured on any recording device. Sauls characterizes Officer Wells's mistaken belief as a pretext and nothing more than a good faith perception of what no one else heard, and therefore insufficient to satisfy the probable cause burden.  Sauls argues that in view of the conflicting and paucity of information to substantiate Officer Wells's belief of what he attributes to Sauls, there is a genuine issue of material fact whether Officer Wells acted as a reasonable and prudent man would to believe that Sauls had uttered the threatening words.

B

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-810 (1996) (citing cases).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810.  "Because traffic stops are considered more similar to investigative detentions than formal arrests, [courts] analyze the legality of traffic stops for Fourth Amendment purposes under the standard

articulated in *Terry v. Ohio*[.]" *United States v. Grant*, 349 F.3d
192, 196 (5th Cir. 2003) (citing *Berkemer v. McCarty*, 468 U.S. 420,
439 (1984)).   *Terry* and its progeny "[permit] law enforcement
officers [to] briefly detain pedestrians and motorists in public,
even without probable cause to arrest them," *United States v.
Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999), if the officers
have reasonable suspicion to believe "that the person stopped is,
or is about to be, engaged in criminal activity," *United States v.
Cortez*, 449 U.S. 411, 417 (1981).   "'Reasonable suspicion' is
objectively reasonable, particularized, and articulable suspicion
that a person has committed or is about to commit a crime." *United
States v. Rogers*, 199 Fed. Appx. 311, 315 (5th Cir. 2006) (per
curiam) (citing *United States v. Jones*, 234 F.3d 234, 239 (2000);
*Cortez*, 449 U.S. at 417)).   "This means that, based upon the
totality of the circumstances, the detaining officers must have a
particularized and objective basis for suspecting the particular
person stopped of criminal activity." *Id.* (citing *Cortez*, 449 U.S.
at 417-18).

"[A] warrantless arrest by a law officer is reasonable under
the Fourth Amendment where there is probable cause to believe that
a criminal offense has been or is being committed." *Davenpeck v.
Alford*, 543 U.S. 146, 152 (2004) (citing *United States v. Watson*,
423 U.S. 411, 417-24 (1976); *Brinegar v. United States*, 338 U.S.
160, 175-76 (1949)).   "Probable cause exists when the totality of

facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Ramirez*, 145 F.3d 345, 352 (5th Cir. 1998).  The police officer's knowledge must establish that there was a " 'fair probability' that a crime occurr[ed]." *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)).  "[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark." *Id.*  "When considering what a 'reasonable person' would have concluded, [courts] take into account the expertise and experience of the law enforcement officials." *Id.* at 268 (citing *United States v. Ortiz*, 422 U.S. 891, 897 (1975)).

C

    Because defendants will not have the burden of proof on Sauls's § 1983 claim, they can meet their summary judgment obligation by pointing the court to the absence of evidence to support Sauls's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once defendants do, Sauls must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Sauls's failure to produce proof as to any essential element renders all other facts immaterial. *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323). Summary judgment is mandatory if Sauls fails to meet his burden. *Little*, 37 F.3d at 1076.

D

Defendants have discharged their initial summary judgment burden by adducing evidence that the traffic stop was supported by reasonable suspicion, which refutes Sauls's claim that the stop was unreasonable and violated his Fourth Amendment rights.[4] Defendants have produced evidence that Officer Welch activated all of the flashing light equipment on his motorcycle and bumped his horn before attempting to enter Sauls's lane; that Sauls was traveling at a speed between 45 to 50 m.p.h. in a 45 m.p.h. limit zone; that Sauls did not yield to Officer Welch's motorcycle; that Sauls came within feet of striking Officer Welch's motorcycle as he drove past; and that Officer Welch believed Sauls's actions violated

---

[4]Although defendants argue that Officers Welch and Wells are entitled to qualified immunity, their brief focuses extensively on the merits of Sauls's § 1983 claims. Accordingly, the court treats the motion as seeking summary judgment dismissing Sauls's constitutional claims on the merits. Because the court holds that Sauls's constitutional claims do not survive summary judgment on the merits, it follows that Officers Welch and Wells are also entitled to qualified immunity.

numerous provisions of the Texas Transportation Code. This evidence is sufficient to shift the burden to Sauls to show there is a genuine issue of material fact concerning whether Officer Welch had reasonable suspicion that Sauls had committed a traffic violation. *Celotex* 477 U.S. at 325. Sauls has not met this burden.

In response, Sauls argues that there is a genuine issue of material fact whether Officer Welch had probable cause to conclude that a criminal offense had been committed. He contends that Officer Welch's stated belief that Sauls had failed to yield to him is undermined by his acknowledgment that Sauls slowed down. He points to Officer Welch's deposition testimony that he had no reason to believe either that Sauls or the vehicles preceding Sauls were speeding. And he seems to argue that because Officer Welch did not properly warn oncoming traffic of his intent to enter the traffic lane by use of his siren, and to ensure that his action was completed with regard for the safety of others, he probably violated Texas law, and this somehow defeats the evidence of probable cause.

Tex. Transp. Code. § 545.156 provides that the operator of a vehicle shall,

> [o]n the immediate approach of an authorized
> emergency vehicle using audible and visual
> signs . . . (1) yield the right-of-way; (2)
> immediately drive to a position parallel to
> and as close as possible to the right-hand
> edge or curb of the roadway clear of any

> intersection; and (3) stop and remain standing
> until the authorized emergency vehicle has
> passed.

It is undisputed that, at the time of the alleged traffic violation, Officer Welch had activated his emergency signals and that Sauls did not yield the right-of-way. Sauls has adduced no evidence that would permit a reasonable jury to find that Officer Welch lacked "objectively reasonable, particularized, and articulable suspicion" that Sauls had committed a traffic violation——specifically a violation of Tex. Trans. Code Ann. § 545.156——when Officer Welch, having activated his emergency signals, witnessed Sauls's failure to yield to his emergency vehicle. *See Rogers*, 199 Fed. Appx. at 315. Sauls's alleged inability to see Officer Welch's lights or hear his emergency horn, and Officer Welch's own negligence, are immaterial to the question whether there is a sufficient "particularized and objective basis for suspecting" that Sauls violated one or more traffic laws. *Id.*

Accordingly, because no reasonable jury could find that Officer Welch lacked reasonable suspicion to effect the traffic stop of Sauls, Sauls's claim that the traffic stop violated his Fourth Amendment rights must be dismissed.

E

Defendants have also presented evidence that Sauls's arrest was supported by probable cause, thus shifting to Sauls the burden of adducing proof that would permit a reasonable jury to find that

- 15 -

the arrest was not supported by probable cause and therefore in violation of Sauls's Fourth Amendment rights. *See Celotex Corp.*, 477 U.S. at 324-25.

Probable cause is established when, considering the "facts known to the arresting officer at the time of the arrest," as well as the totality of the circumstances, a reasonable officer would have concluded that the suspect had committed or was about to commit a criminal violation. *Davenpeck*, 543 U.S. at 152; *Ramirez*, 145 F.3d at 352. According to defendants' undisputed evidence, after Sauls was stopped, he engaged in a "torrent of verbal abuse." Ds. Br. 20. Defendants have also produced evidence that Officer Wells believed he heard Sauls say, "I'll put a bullet in his head." *Id*. They maintain that, considering the totality of the circumstances, this statement provided probable cause for Officer Wells to believe that Sauls had committed the felony of retaliation.

By presenting evidence that would support the conclusion that there was probable cause to effect an arrest, defendants have shifted to Sauls the burden of producing evidence that would permit a reasonable jury to find that Officer Wells lacked probable cause to arrest Sauls. Sauls argues in response that he did not say anything remotely implying that he was threatening another; that no one else heard such a statement; and that no such statement was captured on any recording device. He posits that Officer Wells's

mistaken belief is "nothing more than a good-faith perception of what no one else heard," P. Br. 15, and he cites *Stull v. State*, 772 S.W.2d 449 (Tex. Cr. App. 1989), for the proposition that a good-faith perception is not alone sufficient to satisfy the probable cause burden.

The court concludes that Sauls has failed to produce evidence that would permit a reasonable jury to find that Officer Wells did not have probable cause to arrest Sauls.  Probable cause is determined by considering the "totality of facts and circumstances *within a police officer's knowledge* at the moment of arrest." *Ramirez*, 145 F.3d at 352 (emphasis added).  Sauls argues that he did not state "I'll put a bullet in his head," and that Officer Wells's belief in this statement is mistaken.  He has adduced no evidence, however, that would permit a reasonable jury to find that Officer Wells did not actually believe Sauls made this statement. In his brief, Sauls even characterizes Officer Wells's knowledge as a "mistaken *belief*." P. Br. 15 (emphasis added).  "[A]n arrest is not unconstitutional merely because the information relied upon by the officer later turns out to be wrong."  *BeVier v. Hucal*, 806 F.2d 123, 126 (5th Cir. 1986) (citing *Henry v. United States*, 361 U.S. 98, 102 (1959) ("Evidence required to establish guilt is not necessary."); *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1983)).  Even if Sauls did not, in fact, state, "I'll put a bullet in his head," it appears undisputed that Officer Wells *believed*

Sauls made this statement.

Under Texas Law, the crime of retaliation is defined as "intentionally or knowingly harm[ing] or threaten[ing] to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a . . . public servant." Tex. Penal Code. Ann. § 36.06(a)(1)(A). Section 36.06 does not require that the threat be direct. *Davis v. State*, 890 S.W.2d 489, 491 (Tex. App. 1994, no pet.). Additionally, "[t]he statute does not require the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat." *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App. 2002, no pet.) (citing *In re B.M.*, 1 S.W.3d 204, 207 (Tex. App. 1999, no pet.); *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App. 1996, no pet.); *Puckett v. State*, 801 S.W.2d 188, 194 (Tex. App. 1990, pet. ref'd)). Defendants maintain that Officer Wells concluded that Sauls had committed the crime of retaliation when he heard Sauls state "I'll put a bullet in his head." Although Sauls argues that he did not make the statement, he presented no basis for a reasonable jury to find that, if a reasonable officer thought he heard this statement in the context of effecting a traffic stop, the officer would lack probable cause to believe the person making the statement had committed the offense of retaliation. Accordingly, the court concludes that Sauls has not met his summary judgment burden of adducing evidence that would permit a reasonable jury to find that

Officer Wells lacked probable cause to arrest him for retaliation.

Because Sauls has not adduced sufficient evidence to permit a reasonable jury to find that Officer Welch lacked reasonable suspicion to effect the traffic stop and that Officer Wells lacked probable cause to arrest him, he has failed to raise a genuine issue of material fact that his detention and/or arrest was unreasonable and therefore in violation of his Fourth Amendment Rights. Defendants are therefore entitled to summary judgment dismissing Sauls's § 1983 claims against Officers Welch and Wells.

F

To the extent Sauls seeks to hold Southlake liable under § 1983 for the actions of Officers Wells and Welch, the court concludes for the reasons stated above that it is likewise entitled to summary judgment. *See Thomas v. Redford*, 2002 WL 484651, at *6 (N.D. Tex. March 26, 2002) (Fitzwater, J.) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)). Even if Sauls could overcome this basis for granting summary judgment in Southlake's favor, however, he has failed to demonstrate that either officer's conduct is attributable to Southlake via a custom, policy, or practice, which is necessary to render Southlake liable under § 1983. *See Monell v. N.Y. City Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). The court therefore grants summary judgment in favor of Southlake on Sauls's § 1983 claims based on his detention and arrest.

III

Sauls also alleges that defendants violated his constitutional rights to necessary medications and to be free from incarceration in a jail facility that was too cold for human habitation.

A

As a threshold matter, the court must identify the defendants against whom Sauls is asserting the claims arising from his treatment after he was brought to the Southlake City Jail. Officers Welch and Wells were not involved once Sauls was detained at the Jail. Defendants have adduced evidence that, once Sauls arrived there, neither officer had further involvement, and each officer believed that other Souhtlake employees would comply with applicable requirements for providing adequate care for Sauls's needs. Sauls does not dispute these allegations. Because Sauls has not named any other individual officers as defendants, the court holds that, to the extent Sauls seeks to recover under § 1983 for the treatment he received once he arrived at the Jail, his claims are brought only against Southlake.

B

It is well established that a governmental entity may be liable under § 1983 for violations of constitutionally protected rights. *Monell*, 436 U.S. at 690-91. This liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

- 20 -

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  Before the court reaches the question whether Southlake is liable under § 1983, however, it must first determine whether Sauls has established a constitutional injury.  If Sauls cannot adduce evidence that would enable a reasonable jury to find that he has been deprived of a constitutional right, there is basis for holding Southlake liable under § 1983. *See, e.g., Thomas*, 2002 WL 484651 at *6 (citing *Heller*, 475 U.S. at 799) (holding that where there is no genuine issue of material fact that defendant police officer committed a constitutional violation, city was entitled to summary judgment dismissing § 1983 claim against it).

C

Sauls alleges that his constitutional rights were violated because he was denied necessary medications.  Defendants maintain that Sauls was offered medical care at the scene of his arrest when an ambulance was summoned; that Sauls admits he received Tylenol or aspirin when he banged his head against the Jail wall; and that Sauls concedes that he received prescription medication and did not miss any doses.  Sauls has not responded to these arguments and has not produced any evidence, or even argued, that he was deprived of reasonable medical care.  No reasonable jury could find on the basis of the evidence in the summary judgment record that Sauls was deprived of access to necessary medication while he was detained.

Accordingly, the court grants defendants' motion for summary judgment on this claim.

D

Sauls also alleges that he was detained in a cell that had a temperature well below normal room temperature, and that he was not provided adequate means to protect and warm himself.

1

Defendants move for summary judgment, contending that to succeed as a pretrial detainee asserting a claim based on the cold temperature of his jail cell, Sauls must first establish that the cold was sufficiently severe over a long enough duration as to be constitutionally significant; he must then must show that a state official acted with deliberate indifference to his exposure to such cold.  Defendants posit that an officer wearing a short-sleeve shirt did not find the Police Department or Jail area to be too cold, that Sauls was given two blankets, he had a mattress, and he was eventually moved to a cell that he found to be comfortable. Defendants also point out that Sauls testified that he did not know of any harm that he suffered as a result of his exposure to the cold cell.   They  therefore  maintain  that  there  was  no constitutional violation related to the treatment Sauls received after his release from custody.

Sauls responds that his Fourteenth Amendment rights as a pretrial detainee were violated when he was denied adequate shelter

- 22 -

and clothing.  He asserts that the purpose for assigning him to the particular cell was primarily punitive: to cause him serious pain and discomfort.

2

To determine the appropriate standard to apply in analyzing constitutional challenges under § 1983 by pretrial detainees, the Fifth Circuit has directed courts first to classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman*, *Tex.*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).  In a condition of confinement case, the constitutional attack is on the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  By contrast, in an "episodic act or omission" case, the complained-of harm is a particular act or omission of one or more officials, and the case focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645; *Johnson v. Johnson County*, 2006 WL 1722570, at *3 (N.D. Tex. June 21) (Fitzwater, J.), *appeal dism'd*, No. 06-10762 (5th Cir. Oct. 13, 2006).  Sauls's alleged constitutional injury is fairly characterized as an episodic act or omission claim.  He does not attack the general conditions, practices, rules, or restrictions of pretrial confinement at the Jail; rather, he challenges the Jail officials' decision to place

him in "Cell C," which he maintains was "too cold for human habitation," and their apparent failure to give him a second blanket until the shift change. Compl. ¶ 19. Accordingly, the court will evaluate Sauls's claim under the "episodic act or omission" standard.

3

It is clearly established that "the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." Hare, 74 F.3d at 647-48. Sauls alleges that he was placed in a cell that was shockingly colder than the surrounding area in which he had just been detained, and that he recalls that he was specifically sent to Cell C, which was frigid. He asserts that the "purpose of being placed in the particular cell to which he was assigned was conducted primarily for punitive reasons," P. Br. 16. These conclusory allegations, however, are insufficient for a reasonable jury to find that any particular Jail official acted with deliberate indifference to Sauls's needs. *See Hare*, 74 F.3d at 647-48. In fact, Sauls concedes that he was given a second blanket and was eventually transferred to an adjoining cell, where the temperature was tolerable. Accordingly, assuming *arguendo* that pretrial confinement in an unreasonably cold jail

- 24 -

cell for one night can constitute a deprivation of "basic human needs" under *Hare*, 74 F.3d at 639, and that Sauls was in fact confined in an unreasonably cold cell, the court holds, in light of Sauls's concessions and based on the absence of evidence that any particular Jail official was deliberately indifferent to Sauls's needs, that Sauls has failed to raise a genuine issue of material fact concerning his pretrial confinement claim. The court therefore grants defendants' motion for summary judgment dismissing this claim.

IV

Sauls alleges that Southlake[5] violated his constitutional right to be timely presented to a magistrate for a probable cause hearing and bail setting hearing.

A

The Fourth Amendment generally requires a judicial determination of probable cause within 48 hours of a warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). *White v. Taylor*, 959 F.2d 539, 546 (5th Cir. 1992) (Fitzwater, J.). But this 48-hour safe harbor is not absolute. Probable cause determinations that take place within the 48-hour time frame might still violate the Fourth Amendment if the arrestee can show that

---

[5]It is undisputed that Officers Welch and Wells were not involved in presenting Sauls to a magistrate or in deciding when to do so. The court therefore assumes that Sauls intends to assert this claim only against Southlake.

the probable cause determination was "delayed unreasonably." *County of Riverside*, 500 U.S. at 56.

It is undisputed that, within 48 hours, Sauls was presented to a magistrate for a probable cause determination and determination of available bail.  Defendants argue that Sauls has no evidence to support a claim of an unreasonable delay.  They cite Sauls's deposition testimony that he did not know whether the magistrate was available when his booking process was completed or whether defendants purposely waited to avoid presenting him to a magistrate.  They also cite evidence that Sauls caused a long delay in completing the booking process because he was uncooperative. Sauls admits that he refused to provide full information, including his social security number, for several hours.  And defendants have introduced evidence that, on a normal day, by the time the process of booking Sauls would have been completed, a magistrate would not have been available.  Regardless, Sauls was presented to the magistrate fewer than 24 hours after his booking was completed.

Sauls responds that he was not obligated to provide information about his financial status, social security number, or contact telephone numbers.  He argues that under Texas law, a person is only required to provide his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.  Sauls challenges defendants' evidence that the delay in presenting him to the magistrate

- 26 -

resulted from his not providing "necessary information," arguing that there is no authority that requires an arrestee to divulge telephone numbers, financial information, or social security numbers. Sauls also asserts that Southlake violated various sections of the Privacy Act by failing to inform him of the legal basis for requiring his social security number and by denying him access to the magistrate for a determination of probable cause and an amount of bail. Finally, Sauls posits that although law enforcement agencies are permitted to obtain biographical data that is necessary to complete booking or pretrial services, an arrestee's social security number is not biographical information.

B

Because Sauls was presented to a magistrate for probable cause and bail determinations within 24 hours of his arrest, to avoid summary judgment, he must adduce evidence that would permit a reasonable jury to find that the 24-hour delay in presenting him to a magistrate was unreasonable.

> Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing

other suspects or securing the premises of an
arrest, and other practical realities.

*County of Riverside*, 500 U.S. at 56-57.   Sauls must produce
evidence that would enable a reasonable jury to find that the delay
in presenting him to a magistrate was *unreasonable*.   Sauls has not
met his burden.

Defendants have presented evidence that, at the time Sauls
arrived at the Jail, the magistrate either was not present because
she had already finished her business for the day, or if she was
present, she would have been nearing completion of her duties and
therefore leaving shortly.   Sauls does not dispute this evidence.
Defendants have also introduced proof that Sauls refused to
cooperate and that, during a period of several hours, he refused to
provide full information, including financial information, to the
personnel handling his booking.   Further, they have presented
evidence that the magistrate requires that booking paperwork, which
includes a defendant's financial statement, be complete before she
will conduct the court proceeding.   Defendants maintain, and Sauls
does not dispute, that the magistrate requires the arrestee's
financial information beforehand so that she can determine the
amount of bail and whether the person is entitled to counsel.

Sauls has not produced evidence from which a reasonable jury
could find that the 24-hour delay in presenting him to a magistrate
was unreasonable.   Instead, Sauls attempts to suggest that
Southlake violated the Privacy Act by failing to inform him of the

- 28 -

legal basis for requiring disclosure of his social security number and of the uses to be made of the number.  Sauls has produced no summary judgment evidence that would enable a reasonable jury to find that any of defendants' actions violated the Privacy Act. Moreover, even assuming that a reasonable jury could find that the Privacy Act was violated, this is insufficient of itself to establish that, in requiring Sauls to provide his social security number and certain financial information, and in mandating completion of the booking paperwork as a prerequisite to presentation to a magistrate, there was an unreasonable delay in presenting Sauls to a magistrate.

Sauls has failed to raise a genuine issue of material fact on the question whether the 24-hour delay in presenting him to a magistrate violated his Fourth Amendment rights.  Accordingly, defendants are entitled to summary judgment dismissing this claim.

V

Sauls seeks to hold Southlake liable under § 1983, alleging that it developed and maintained policies or customs exhibiting deliberate indifference to its citizens' constitutional rights. Specifically, he avers that it was Southlake policy to encourage its police officers to create charges for the purpose of covering up police misconduct; that by custom and policy, Southlake deprived him of a timely probable cause determination and punished him without a trial and without due process by incarcerating him in a

jail facility too cold for human health and welfare; and that by custom or policy, Southlake does not require its officers to make timely presentment of arrested persons to a magistrate for a probable cause determination and the setting of bail.

The court has independently examined the record evidence regarding the traffic stop and Sauls's arrest, the allegations regarding the cold conditions in the Jail during Sauls's pretrial confinement, and the allegations regarding the delay in presenting Sauls to a magistrate. Viewing all the evidence in the light most favorable to Sauls as the summary judgment nonmovant, the court holds that a reasonable jury could not find that Sauls suffered a constitutional violation. Absent a genuine issue of material fact that any individual officer committed a constitutional violation, Southlake is entitled to summary judgment. *See Thomas*, 2002 WL 484651 at *6 (citing *Heller*, 475 U.S. at 799). Moreover, even if Sauls could overcome this basis for granting summary judgment in Southlake's favor, he has failed to demonstrate that the officers' conduct is attributable to Southlake through a custom, policy, or practice, which is necessary to render Southlake liable under § 1983. *See Monell*, 436 U.S. at 694. Defendants argue that Southlake did not have a policy or practice that caused a violation of Sauls's rights. In response, Sauls has failed to produce evidence that would permit a reasonable jury to find that there was such a policy or practice. Accordingly, the court grants

defendants' motion for summary judgment dismissing Sauls's § 1983 claims against Southlake.

VI

Sauls also alleges pendent state-law claims against Officers Welch and Wells for assault and battery, false arrest and illegal imprisonment, and malicious prosecution.[6]  Defendants move for summary judgment dismissing these claims on various grounds, but the court need only address their contention that they are entitled to police officer immunity.

Under Texas law, "[p]olice officers are entitled to immunity for performing discretionary duties within the scope of their authority provided they act in good faith." *City of San Antonio v. Ytuarte*, ___ S.W.3d.___, 2007 WL 1299145, at *1 (Tex. May 4, 2007) (per curiam) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)).  To establish that the officer acted in good faith, defendants must show that "a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002) (citing *Chambers*, 883 S.W.2d at 656-57). Defendants posit that they have shown that they did not commit acts that establish the necessary elements of a tort action against the individual officers and that this same evidence supports their

---

[6]These claims are not asserted against Southlake.

Texas immunity defense.

Sauls has not responded to defendants' arguments regarding police officer immunity and has not pointed to evidence that would permit a reasonable jury to find that Officers Welch and Wells are not entitled to immunity from liability on Sauls's state-law claims. Accordingly, defendants have established their entitlement to police officer immunity as to Sauls's state-law claims for assault and battery, false arrest and illegal imprisonment, and malicious prosecution against Officers Welch and Wells.

                          *     *     *

For the reasons set out, defendants' April 20, 2007 motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today.[7]

     **SO ORDERED.**

     July 24, 2007.


                              _____
                              SIDNEY A. FITZWATER
                              UNITED STATES DISTRICT JUDGE


_____

     [7]The action against Officer Doe is dismissed without prejudice.